UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JOHN HASSAN,

         Plaintiff,    **MEMORANDUM AND ORDER**

 -against-           13-cv-4544 (JMA)(SIL)

TOWN OF BROOKHAVEN

         Defendant.

------------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

*Pro se* Plaintiff John Hassan ("Plaintiff" or "Hassan") commenced this action on August 12, 2013 against Defendant Town of Brookhaven ("Defendant" or the "Town"), alleging constitutional violations by the Town and its agents.[1] Presently before the Court is Defendant's motion for summary judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 56. *See* Notice of Motion for Summary Judgment by Town of Brookhaven, DE [92]. For the reasons set forth below, the motion is granted.[2]

---

[1] Plaintiff initially commenced the action by filing an Order to Show Cause seeking a temporary restraining order and injunctive relief. *See* Docket Entry ("DE") [1]. The Honorable Sandra J. Feuerstein declined to sign the Order to Show Cause, but by Order dated September 13, 2013, construed it to be a Complaint. *See* DE [11]. Thereafter, on September 23, 2013, Hassan filed an Amended Complaint. *See* DE [12]. On October 24, 2017, Plaintiff filed a Second Amended Complaint, *see* DE [83], which is now the operative pleading.

[2] This motion is before the Court for decision on consent of the parties. *See* DE [97].

## I. BACKGROUND[3]

The following facts are taken from the pleadings, affidavits, exhibits and Defendant's Local Civil Rule 56.1(a) statement.[4] Unless otherwise noted, these facts are not in dispute.

This lawsuit arises from the Town's prosecution of Hassan, pursuant to Section 45-4 of the Sanitary Code of the Town of Brookhaven (the "Anti-Littering Law"), which provides, in relevant part:

> Any person owning, occupying or in control of private property shall maintain such property, including the sidewalk in front thereof, free of litter. In the event that the owner, occupant or person in control of private property located within the Town shall fail to remove litter located on such property, the Town shall have the authority, as provided for herein, to enter upon such property, to remove the litter so located, to assess the cost and expense of such action against the property and to establish a lien in the manner provided herein below.

Local Rule 56.1 Statement ("Def. 56.1"), DE [92-1], ¶ 3. According to Plaintiff, an unidentified resident complained to Defendant about the condition of his property located in Center Moriches, New York (the "Property"). *See* Second Amended Complaint ("SAC"), DE [83], 3.[5] As a result, agents of the Town inspected the Property and issued notices, dated July 30, 2013 and August 9, 2013, advising Hassan that the Property was "in an unsanitary condition" due to the presence of litter, including "plastic bags, food wrappers, totes, buckets, plywood, [and a] cooler[.]" *See* Def. 56.1, ¶¶ 5-6; Exhibit A ("Ex. A"), DE [92-4]; Exhibit B ("Ex. B"), DE [92-5]. These

---

[3] As the parties' familiarity with the underlying facts and extensive procedural history is presumed, the Court sets forth only background material that is directly relevant to the instant motion.
[4] Plaintiff has not submitted a Local Civil Rule 56.1(a) statement.
[5] The Second Amended Complaint does not enumerate paragraphs or pages. Accordingly, citations are to the pages by the order in which they appear.

2

notices further informed Plaintiff that if he did not remove the litter, so as to comply with the Town's Anti-Littering Law, Defendant would enter the Property and "assess the cost of such removal against the [P]roperty." *See* Def. 56.1, ¶ 6; Ex. B.

Shortly thereafter, Hassan filed the instant lawsuit alleging that the Town's agents had trespassed on the Property and that the Anti-Littering Law was unconstitutional. *See* Proposed Order to Show Cause, DE [1]. While the instant lawsuit was underway, Plaintiff was found guilty of violating the Anti-Littering Law after a bench trial held on September 19, 2014 in Brookhaven Community Court. *See* Def. 56.1, ¶ 10; Affirmation ("Def. Affirmation"), DE [92-2], ¶ 10; *see also* Exhibit C ("Ex. C"), DE [92-6].

Four years after initiating this lawsuit, on leave of the Court and with Defendant's consent, Hassan filed a Second Amended Complaint to include allegations that the Town had denied him access to the local Meals on Wheels program. *See* SAC, 4-5. Defendant now moves for summary judgment on all counts of Plaintiff's Second Amended Complaint.

Plaintiff alleges that: (1) the Anti-Littering Law, which "restrict[s] and declare[s] what possessions a resident may have on his property[,] is malicious, selective and prejudiced"; (2) the Town violated his Fourth Amendment rights by unlawfully spying on him and photographing his "possessions and activities within the boundaries of [his] privacy" and attempting to seize his possessions; (3) the July 30, 2013 and August 9, 2013 notices from Defendant advising Hassan that he was in violation of the Anti-Littering Law were defamatory; and (4) the Town's practice of

3

inspecting the homes of applicants for its local Meals on Wheels program constitutes an illegal search in violation of the Fourth Amendment. *See* SAC, 2-5; *see also* DE [98] (letter from Hassan summarizing claims).[6]

## II. LEGAL STANDARDS

### A. <u>Summary Judgment</u>

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "difficult" burden of establishing that there are no genuine issues of material fact such that summary judgment is appropriate. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a

---

[6] The Court notes that Plaintiff also mentions throughout his filings that the Town "threaten[ed] to use lethal force against [him]," but does not explain what he means by this or what cause of action he seeks to assert. *See* SAC, 2; DE [98]. Based on a review of Hassan's submissions, the Court determines that by alleging that Defendant used "lethal force," Plaintiff is referring simply to the Town's enforcement of the Anti-Littering Law against him and is therefore not alleging a separate cause of action. *See, e.g.*, SAC, 4 ("A couple weeks later[,] a man came to my door and gave me a summons to Town Court and he pointed to and mentioned my . . . property and possessions that were the objects of the summons. I wrote a letter to the Town Court that the matters in the summons were in U.S. District Court jurisdiction, but my letter was returned with the statement that they did not accept it until I appeared in court. And I received more than 1 letter that threatened me with lethal force."); Petitioner's Opposition to Respondent's Motion for Summary Judgment ("Pl. Opp."), DE [91], ¶ 7 ("The [Town] District Court threatened me with lethal force and arrest if I did not appear as ordered."); DE [98] ("Threatening to use lethal force against me even though I had brought my response against [the] Town in U.S. District Court.").

motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation marks and citation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.") (citation omitted). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) (citation omitted); *see also Jeffreys*, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (internal quotation marks and citation omitted).

**B. *Pro Se* Pleadings**

It is well-established that pleadings filed by *pro se* plaintiffs, such as Hassan, are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 176 (1980); *see also Erickson v. Pardus*,

5

551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). The Second Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 145-46 (2d Cir. 2002) (internal alterations omitted); *see also Colorado Capital v. Owens*, 227 F.R.D. 181, 193 (E.D.N.Y. 2005) (holding that a court must "make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of her or his lack of legal training") (internal quotation marks and citations omitted). Further, courts must afford *pro se* plaintiffs "special solicitude" before granting motions for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citation omitted). However, the court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Ogunmokun v. Am. Educ. Servs.*, No. 12-cv-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014) (internal quotation marks and citation omitted).

## III. DISCUSSION

The Town moves for summary judgment against Hassan on all counts of his Second Amended Complaint. In reviewing Defendant's motion for summary judgment, the Court relies on those facts not in dispute and gives Plaintiff the benefit of the doubt when his assertions conflict with those of the Town. *See In re Corcoran*, 246 B.R. 152, 156 (E.D.N.Y. 2000) (citing *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir.

6

1996)). Further, in light of Hassan's *pro se* status, the Court considers not only his opposition to Defendant's motion for summary judgment, *see* DEs [91], [95], but also considers two submissions which are not labeled as opposition, but which Plaintiff filed after the Town had filed its motion for summary judgment, *see* DEs [98]-[99]. *See Santiago v. C.O. Campisi Shield No. 4592*, 91 F. Supp. 2d 665, 671 (S.D.N.Y. 2000) (noting that "the Second Circuit has repeatedly ordered the district courts to bend the procedural rules for the benefit of *pro se* litigants"); *see also Bradley v. Coughlin*, 671 F.2d 686, 690 (2d Cir. 1982) (cautioning courts against elevating "form over substance" in *pro se* cases).

### A. <u>Count I: Selective Enforcement</u>

Plaintiff first alleges that the Town's Anti-Littering Law is "malicious, selective and prejudiced[.]" *See* SAC, 2. The Court treats this cause of action as one for unlawful selective enforcement. To prevail on a claim of selective enforcement of the law in violation of the Equal Protection Clause, a plaintiff must prove that: (1) "compared to others similarly situated, [he] was selectively treated"; and (2) "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citations omitted).

According to Hassan, the Town improperly classified his possessions as litter simply because they are not objectively valuable. *See* Pl. Opp., ¶ 16 ("Because somebody discards something that they are not proud to own, [it] cannot be

7

considered litter if it is useful and valuable to me."). He argues that his "possessions are as useful and valuable to [him] as the $1,000 bar carts and outdoor rotisseries, boats, cars, trucks, lawn tractors and . . . swimming pool implements and accessories [and that he is] entitled to live as well as [he is] mentally, physically and financially able." *See* Response in Opposition ("Pl. Second Opp."), DE [95], 2.[7] The Court understands Plaintiff's argument to mean that the Anti-Littering Law was enforced against him, while it was not enforced against residents who have more valuable items on their properties than he does, such as boats and cars. Hassan does not, however, offer any evidence that he was treated differently than others who are similarly situated or that such treatment was based on impermissible considerations, such as his race or religion. By contrast, Defendant's counsel affirms, by way of example—and Plaintiff does not deny—that approximately 30 out of 300 tickets issued each week to residents of the Town over the course of a recent two-year period were for violations of Section 45-4(d) of the Anti-Littering Law, the same provision of the law that Plaintiff violated. *See* Def. Affirmation, ¶ 23. Thus, Defendant proffers competent evidence that the Anti-Littering Law was not selectively enforced against Hassan.

Accordingly, Plaintiff fails to raise a genuine dispute as to whether the Town selectively enforced its Anti-Littering Law against him, and Defendant's motion as to Hassan's first cause of action is granted.

---

[7] Because the pages of Plaintiff's second opposition are not numbered, the Court cites to pages by the order in which they appear.

### B. Count II: Unlawful Search and Seizure

The Fourth Amendment protects individuals against unreasonable searches and seizures. *See* U.S. Const. amend. IV. A search occurs when the Government either physically intrudes upon an individual or the individual's possessions or otherwise invades an area "in which the individual has a reasonable expectation of privacy." *Glover v. City of New York*, No. 15-cv-4899, 2018 WL 4906253, at *28 (E.D.N.Y. Oct. 9, 2018) (citation omitted). A seizure occurs when the Government interferes in some meaningful way with the individual's possession of property. *Id.* at *31 (citation omitted).

Initially, Plaintiff alleges that the Town—through its agent, Samantha Guarino ("Guarino")—unlawfully entered the Property to take photographs. According to Hassan, the photographs Guarino took "could not possibly [have] been all taken from the public street . . . [and] she must have gone around many large trees and bushes and photographed areas of privacy and solitude which . . . could not possibly be exposed from the street." Pl. Opp., ¶ 13. He further alleges that he once heard two men, one of whom he is "certain" was an employee of the Town, talking in front of his mailbox, shortly after an unknown person or persons had "inserted a plastic bag" into his mailbox. *Id.* at ¶¶ 3-5; *see also* SAC, 3.

Hassan fails, however, to provide any information that raises a genuine dispute as to whether Guarino or any other agents of the Town entered the Property. With respect to Guarino, Plaintiff submits a Google street-view photograph of the Property and argues that it looks different than the photographs that Guarino took

9

of the Property and therefore demonstrates that her photographs could have only been taken by unlawful entry onto the Property. *See* Pl. Opp., ¶ 14. This grainy black-and-white photograph, however, does not create a genuine dispute, especially when paired with Hassan's concession during his deposition that he never saw Guarino on the Property. *See* Exhibit K ("Ex. K"), DE [92-14], 25-26. Moreover, Defendant submits Guarino's sworn testimony from the September 19, 2014 bench trial, where she denied ever entering the Property and explained that the photographs of the Property were taken from the street. *See* Def. Affirmation, ¶ 17; Exhibit D ("Ex. D"), DE [92-7]. While Plaintiff asserts that he is "certain" that Guarino committed "deliberate perjury without a doubt," *see* Def. Second Opp., 2, he offers no evidence to elevate his claim from speculation to a genuine dispute of fact. With respect to his allegation that two men, including an agent of the Town, entered the Property, Hassan offers no evidence whatsoever. Accordingly, the Court finds that there is no genuine dispute of fact as to whether Guarino or other agents of the Town unlawfully entered the Property.

Next, Plaintiff alleges that Defendant attempted to seize his possessions. At his deposition, however, he conceded that the Town had not taken anything. *See* Ex. K, 26. Accordingly, there is no genuine dispute as to whether Defendant interfered in some meaningful way with Hassan's possessions in violation of the Fourth Amendment.

Because Plaintiff fails to submit any evidence that an unlawful search or seizure occurred, the Court grants Defendant's motion for summary judgment on Count Two of the Second Amended Complaint.

C. **Count III: Defamation**

Next, Hassan alleges that the July 30, 2013 and August 9, 2013 notices regarding his violation of the Anti-Littering Law were defamatory because they "had been posted on the street edge of [the] Property facing the public street to notify the public[.]" *See* SAC, 3. To state a claim for defamation, a plaintiff must allege: (1) a false statement about him; (2) publication to a third party; (3) fault on the part of the statement's publisher; and (4) special harm or "defamation *per se*." *Mestecky v. New York City Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019) (internal quotation marks and citation omitted); *see also Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629, 641 (S.D.N.Y.), *aff'd sub nom.*, 751 F. App'x 69 (2d Cir. 2018) (citations omitted).

Initially, Plaintiff fails to allege that the notices contained false statements. The notices stated that Hassan was violating the Anti-Littering Law by having litter scattered on the Property, *see* Ex. A; Ex. B, and Plaintiff was indeed found guilty of violating the Anti-Littering Law at a bench trial held on September 19, 2014 in Brookhaven Community Court. *See* Def. 56.1, ¶ 10; Def. Affirmation, ¶ 10. Truth provides "an absolute, unqualified defense" to defamation claims. *Cortes*, 285 F. Supp. 3d at 642 (internal quotation marks and citation omitted). Accordingly,

11

because Hassan has failed to raise a genuine dispute as to the veracity of the statements contained in the notices, his defamation claim fails as a matter of law.

Plaintiff's claim further fails because he does not allege special harm or defamation *per se*. Special harm consists of the loss of something of pecuniary value flowing "directly from the injury to reputation caused by the defamation." *Cain v. Atelier Esthetique Inst. of Esthetics Inc.*, 733 F. App'x 8, 11 (2d Cir. 2018), *cert. denied,* 139 S. Ct. 1199 (2019), *reh'g denied,* 139 S. Ct. 1598 (2019) (internal quotation marks and citation omitted). Defamation *per se* exists where the alleged statements: (1) charge the plaintiff with a serious crime; (2) injure plaintiff's business or profession; (3) charge plaintiff with a "loathsome disease"; or (4) "impute[] unchastity to a woman." *Jordan v. Tucker, Albin & Assocs., Inc.*, No. 13-cv-6863, 2017 WL 2223918, at *10 (E.D.N.Y. May 19, 2017) (quoting *Zherka v. Amicone*, 634 F.3d 642, 645 n.6 (2d Cir. 2011)). Here, Hassan fails to allege that the notices resulted in any harm to his reputation, much less that he lost something of economic value, nor does he allege that the notices contained statements within one of the four categories that give rise to defamation *per se*.

Accordingly, as Plaintiff fails to allege two of the elements required for a defamation claim under New York law, Defendant's motion for summary judgment on Count Three of the Second Amended Complaint is granted.

### D. <u>Count IV: Unlawful Search Through Meals on Wheels Program</u>

Finally, Hassan alleges that he was unlawfully denied access to the local Meals on Wheels program. *See* SAC, 4-5. According to Plaintiff, Defendant would only allow

him to participate in the Meals on Wheels program if he allowed agents of the Town to conduct a home inspection, which he refused to do because he believed the home inspection was intended to "forcibly remove seniors from their homes" and "foster[] excuses to appoint politically connected guardians and real estate brokers to take possession of homes and finances and send residents to politically connected nursing homes and feed the political corruption well known in [the] Town[.]" *Id.* at 5. In support of its motion for summary judgment, Defendant's counsel affirms that all residents who participate in Meals on Wheels must have their homes inspected for their own safety and that the Town was not attempting to seize the Property. *See* Def. Affirmation, ¶ 24. Hassan offers no contradictory evidence, beyond his own speculation, and thus, the Town's motion with respect to Plaintiff's fourth cause of action is granted.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted, and this matter is closed.

Dated:     Central Islip, New York
            March 3, 2020

**SO ORDERED**

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge